## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

---

CORY BJERKE, individually
and as a representative of the class,

Plaintiff,

v.

THE HOME DEPOT, INC.,

Defendant.

Civil Action No.1:15-cv-03733-ELR-JFK

**FIRST AMENDED COMPLAINT
– CLASS ACTION
(JURY TRIAL DEMANDED)**

---

Cory Bjerke ("Plaintiff"), by and through his attorneys, on behalf of himself and the class set forth below, brings the following Class Action Complaint against The Home Depot, Inc. ("Defendant" or "Home Depot").

## INTRODUCTION

1.     This consumer class action is brought under the Fair Credit Reporting Act ("FCRA") against a company who routinely and systematically violates the FCRA's basic protections by failing to provide the "stand-alone" disclosure required by the FCRA.  As Defendant's practices were routine and systematic, Plaintiff asserts claims for damages on behalf of himself and a class of similarly situated individuals on whom Home Depot caused a consumer report to be

1

procured without first providing the required stand-alone disclosure.

## THE PARTIES

2.     Plaintiff Cory Bjerke is an adult resident of Albany, Oregon.

3.     Defendant The Home Depot, Inc. is the "world's largest home improvement specialty retailer with stores in all 50 states." https://corporate.homedepot.com/ Pages/default.aspx (last visited January 21, 2015).  Defendant is headquartered in Atlanta, Georgia and operates stores located throughout the state of Oregon, including in Multnomah County.

## JURISDICTION AND VENUE

4.     Plaintiff filed this case on July 31, 2015 in Oregon Circuit Court, County of Multnomah.

5.     On September 10, 2015, Defendant removed the action to the United States District Court for the District of Oregon, stating that the federal court has original federal question jurisdiction over the case pursuant to 28 U.S.C. § 1331. (ECF No. 1.)

6.     On October 23, 2015, the case was transferred to this Court.  (ECF No. 36.)

7.     This Court has jurisdiction over Plaintiff's claims under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

8.     Venue is proper in this District because Defendant operates in this District.

## STATUTORY BACKGROUND

9.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

10.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

11.     Congress was particularly concerned about the use of background reports in the employment context, and therefore defined the term "consumer reports" to explicitly include background reports procured for employment purposes.  *See* 15 U.S.C. § 1681a(d)(1)(B).

12.     Through the FCRA, Congress required employers to make a clear and conspicuous written disclosure to job applicants, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment

purposes.  15 U.S.C. § 1681b(b)(2).

13.    Specifically, Congress made it unlawful for an employer or prospective employer to "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless …a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes."  15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added).  This requirement is frequently referred to as the "stand-alone disclosure requirement."

14.    Many other provisions of the FCRA are also notice provisions.  *See* 15 U.S.C. § 1681b(b)(3)(A) (pre-adverse employment action notice requirement); § 1681b(4)(B) (notification of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681d(a) (disclosure of investigative report); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding the use of public record information); § 1681h (form and conditions of disclosure); § 1681m(a) (notice of adverse action).

15.    Like the other notice provisions in the FCRA, the stand-alone disclosure provision puts consumers on notice that a report about them may be prepared.  This knowledge enables consumers to exercise a variety of other

substantive rights conferred by the statute, many of which work to ensure accuracy, confidentiality, and fairness.  15 U.S.C. § 1681c(a) (limiting temporal scope of information that can be reported); § 1681e(b) (mandating that consumer reporting agencies employ procedures to ensure "maximum possible accuracy" in reports); § 1681k (requiring consumer reporting agencies that report public record information to employers to either provide notice to the consumer that information is being reported or have "strict procedures" to ensure that information is "complete and up to date"); § 1681i (requiring that consumer reporting agencies investigate any disputed information); § 1681g (requiring that consumer reporting agencies provide a complete copy of the consumer's file to the consumer).

16.    Without a clear notice that a consumer report is going to be procured on them, applicants are hindered in their ability to preserve their privacy, and to correct errors or other problems with the reports.

17.    As discussed below, Defendant routinely violated the FCRA, and consumers' rights, by failing to provide the required stand-alone disclosure to before procuring consumer reports for employment purposes.

## ALLEGATIONS RELATING TO PLAINTIFF

18.    In October 2014, Plaintiff applied to do floor installation work with G.M.A. Construction ("G.M.A.").

19.    G.M.A. is a home building and remodeling company that contracts with Defendant to perform installation work for Defendant's customers as a "Home Depot Service Provider."

20.    Home Depot Service Providers "are the lifeline of [Defendant's] business."   http://www.homedepot.com/c/suppliers_and_providers (last visited January 21, 2015).

21.    Throughout the two years preceding the filing of this Complaint, Home Depot has required that all of the people who work on Home Depot projects, including Service Providers and people who work directly for Service Providers, undergo and pass a background check with Defendant.  (*See* Exhibit 1.)

22.    Specifically, during the two years preceding the filing of this Complaint, Home Depot has run its background check program with ChoicePoint, LexisNexis and First Advantage.

23.    ChoicePoint, LexisNexis and First Advantage are consumer reporting agencies because they sell background reports for employment purposes.

24.    ChoicePoint was acquired in 2008 by LexisNexis' parent corporation. In 2013, LexisNexis was acquired by First Advantage.

25.    In October 2014, so that Plaintiff could work on Home Depot projects, G.M.A. provided Plaintiff with application materials.

26.     The application materials included a form titled "Disclosure" and "Authorization," regarding the obtaining of a consumer report, which Home Depot requires its subcontractors, including Bjerke, to complete. (Exhibit 2.)

27.     Also included in the application materials is a form titled "Service Provider Background Screening Consent Form," regarding the obtaining of a consumer report, which Home Depot requires its subcontractors, including Bjerke, to complete. (Exhibit 3.)

28.     Both the Disclosure and Authorization and the Service Provider Background Screening Consent Form contain extraneous items that violate the FCRA's stand-alone disclosure requirement.

29.     First, both forms contain a liability waiver that purports to release Defendant, and other entities from liability.

30.     Specifically, the Disclosure & Authorization states:

I hereby release ChoicePoint, Company, Home Depot and any person or entity that provides information pursuant to this authorization from any and all liabilities arising from any claims, lawsuits or other actions in regard to the information obtained from any and all of the above referenced sources.

(Exhibit 2.)

31.     The Service Provider Background Screening Consent Form states:

I release Home Depot and/or its agents and any person or entity that provides information pursuant to this authorization from any and all

7

liabilities arising from any claims, lawsuits, or other actions in regard to the information obtained from any and all of the above referenced sources.

and

I agree on my own behalf (and on behalf of Service Provider if I am an owner or principal of Service Provider) to indemnify, defend, and home harmless Home Depot and Home Depot's parent, subsidiaries, affiliates, employees, agents, and customers from and against any demands, claims, or liability arising from the gathering and use of any information obtained from any and all of the above-referenced sources.

(Exhibit 3.)

32.    The Disclosure & Authorization and Service Provider Background Screening Consent Form also each contain a purported agreement that the applicant further agrees "that the giving of any false, misleading, or incomplete information will be grounds for denial or termination of [the applicant's] authorization to participate in the Home Depot installed sales program." (Exhibits 2-3.)

33.    The Disclosure & Authorization Form and Service Provider Background Screening Consent Form were the only documents Plaintiff ever received that related to the fact that anyone was going to procure a consumer report on him in connection with his work for Defendant.

34.    On or around October 10, 2014, Home Depot obtained a consumer

report on Plaintiff for employment purposes from First Advantage f/k/a LexisNexis f/k/a Choice Point.  (Exhibit 4.)

35.    Home Depot informed Plaintiff, on or around October 10, 2014, that Plaintiff's report "includes information that may eliminate [him] from being authorized to perform work on The Home Depot jobs assigned to [G.M.A.]." (*Id.*)

36.    On or around November 10, 2014, Home Depot informed Plaintiff that after reviewing Plaintiff's report, "The Home Depot cannot authorize you to perform work on The Home Depot jobs assigned to [G.M.A.]." (Exhibit 5.):

37.    Plaintiff served Defendant with a pre-suit demand, which Defendant received more than 30 days ago. (Exhibit 6.)

38.    Plaintiff suffered concrete harm from Defendant's actions in at least two ways.  First, Defendant invaded Plaintiff's right to privacy.  Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (i.e., disclosure and authorization) set forth in the following subsections.  15 U.S.C. § 1681b(b)(2).  As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization."  *Harris v. Home Depot, U.S.A., Inc.*, 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015).  By

9

procuring Plaintiff's report without complying with these requirements, and by requiring Plaintiff to purport to waive numerous other privacy-related rights (*see* ¶¶ 27-28 above), Defendant invaded Plaintiff's privacy.

39.    Second, Plaintiff has suffered a concrete informational injury because Defendant failed to provide Plaintiff with information to which he was entitled by statute. *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989); *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998).

## ALLEGATIONS RELATING TO DEFENDANT'S PRACTICES

40.    More than fifteen years ago, the Federal Trade Commission emphasized that including extraneous information, especially a liability waiver, in a disclosure form, as Defendant did here, is a violation of the FCRA. *Letter from William Haynes, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO Accufax Div.* (June 12, 1998), available at 1998 WL 34323756 (explaining that "inclusion of a . . . waiver in a disclosure form will violate Section [1681b(b)(2)(A)] of the FRCA, which requires that a disclosure consist 'solely of the disclosure that a consumer report may be obtained for employment purposes'").

41.    Courts that have addressed extraneous information, such as liability waivers, placed in disclosure forms have agreed with the FTC that including such a waiver violates the FCRA's stand-alone disclosure requirement. *Harris v. Home*

10

*Depot U.S.A., Inc.*, No. 15-CV-01058-VC, ___ F. Supp. 3d ____, 2015 WL 4270313, at *2 (N.D. Cal. June 30, 2015) (holding that "a release of liability is separate and distinct from the disclosure and authorization" and finding plausible that Defendant "inserted this [release] into the disclosure form despite knowing that to do so would violate the FCRA, or at least with reckless disregard for the FCRA's requirements"); *Moore v. Rite Aid Hdqtrs Corp.*, No. CIV.A. 13-1515, 2015 WL 3444227, at *12 (E.D. Pa. May 29, 2015) ("[T]he text of the statute and the available agency guidance demonstrate[] that the inclusion of information on the form apart from the disclosure and related authorization violates § 1681b(b)(2)(A)."); *Lengel v. HomeAdvisor, Inc.*, No. 15-2198-RDR, ___ F. Supp. 3d ___, 2015 WL 2088933, at *8 (D. Kan. May 6, 2015) ("[I]t may be plausibly asserted that the standalone disclosure provision was recklessly violated by the use of the Release form because it did not consist solely of the disclosure that a consumer report may be obtained for employment purposes."); *Speer v. Whole Food Mkt. Grp., Inc.*, No. 8:14-CV-3035-T-26TBM, 2015 WL 1456981, at *3 (M.D. Fla. Mar. 30, 2015) (finding that plaintiff had stated a claim wherein plaintiff alleged that "the inclusion of the waiver along with the disclosure violated the FCRA"); *Milbourne v. JRK Residential Am., LLC*, ___ F. Supp. 3d ___, No. 3:12-cv-861, 2015 WL 1120284, at *6 (E.D. Va. Mar. 10, 2015) ("Thus, judging

by the text of the statute alone, inclusion of a waiver within the document containing the disclosure would violate [the FCRA].”); *Dunford v. American Databank, Inc.*, No. C 13-03829, ___ F. Supp. 3d ___, 2014 WL 3956774, at *6 (N.D. Cal. Aug. 12, 2014) (finding document that contained a liability release to “not consist solely of the disclosure because it added a paragraph exonerating [the defendant]”); *Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825, at *2 (N.D. Ill. July 17, 2014) (finding inclusion of liability waivers to be “contrary to the express language of the FCRA, which requires a disclosure ‘in a document that consists solely of the disclosure’”); *Singleton v. Domino’s Pizza, LLC*, No. 12-cv-823, 2012 WL 245965, at *9 (D. Md. Jan. 25, 2012) (“[B]oth the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document.”); *Reardon v. Closetmaid Corp.*, No. 2:-8- cv-01730, 2013 WL 6231606, at *10-11 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be “facially contrary to the statute at hand, and all of the administrative guidance”); *Martin v. Fair Collections & Outsourcing, Inc.*, No. GJH-14-3191, 2015 WL 4064970, at *4 (D. Md. June 30, 2015) (denying motion to dismiss where form “contain[ed] an authorization to obtain the report, information on when the applicant must challenge the accuracy of any report, an acknowledgement that the employee understands that ‘all

employment decisions are based on legitimate non-discriminatory reasons,' the name, address and telephone number of the nearest unit of the consumer reporting agency designated to handle inquiries regarding the investigative consumer report, and several pieces of state-specific information"); *Rawlings v. ADS Alliance Data Sys., Inc.*, No. 2:15-CV-04051-NKL, 2015 WL 3866885, at *6 (W.D. Mo. June 23, 2015) (stating "[w]here the FCRA's language is clear, a dearth of guidance does not justify an objectively unreasonable interpretation of the statute" and denying motion to dismiss where form contained extraneous state law disclosures and plaintiff alleged that defendant "knowingly used a disclosure form . . . that contained extraneous information in violation of the FCRA"); *Jones v. Halstead Mgmt. Co., LLC*, ___ F. Supp. 3d ___, No. 14-CV-3125 VEC, 2015 WL 366244, at *5 (S.D.N.Y. Jan. 27, 2015) (finding disclosure to not stand-alone when it included "information regarding time frames within which the applicant must challenge the accuracy of any report; an acknowledgement that 'all employment decisions are based on legitimate non-discriminatory reasons;' . . . and all sorts of state-specific disclosures"); *Miller v. Quest Diagnostics*, No. 2:14-cv-4278, ___ F. Supp. 3d ___, 2015 WL 545506, at *3 (W.D. Mo. Jan. 28, 2015) (finding "inclusion of the state-mandated consumer report information, administrative sections, and release language in the disclosure violates 15 U.S.C. § 1681b(b)(2)");

*see also E.E.O.C. v. Video Only, Inc*., No. CIV. 06-1362-KI, 2008 WL 2433841, at *11 (D. Or. June 11, 2008) (granting summary judgment against the defendant-employer who made disclosure "as part of its job application which is not a document consisting solely of the disclosure.").

42.     Defendant knew that it had an obligation to provide a stand-alone disclosure, and that it was not doing so. This is evidenced by its decision to attempt to include a liability release absolving itself from those violations in its disclosure.

43.     By including a liability release in its disclosure, Defendant also deviated from a legally binding certification it provided to its consumer reporting agencies.

44.     The FCRA requires that, prior to procuring consumer reports, employers must certify to the consumer reporting agency that they will comply with the FCRA's stand-alone disclosure requirements.   See 15 U.S.C. § 1681b(b)(1).

45.     In accordance with their standard procedures, the consumer reporting agencies from whom Defendant acquired consumer reports during the two years preceding the filing of this Complaint required Defendant to certify that it would comply with the stand-alone disclosure provisions of the FCRA.

46.     Defendant did, in fact, certify to those agencies that it would comply

with the stand-alone disclosure provisions of the FCRA.

47.     In its contract with those agencies, Defendant also agreed that before obtaining a consumer report, Defendant would provide a disclosure in writing to the consumer that a consumer report will be obtained for employment purposes and that such disclosure will be made in a document consisting solely of the disclosure.

48.     Defendant did not procure Plaintiff's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

49.     By systematically inserting a liability release and other extraneous information into Plaintiff's and other class members' disclosures, Defendant willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i).

## CLASS ACTION ALLEGATIONS

50.     Plaintiff asserts his claims on behalf of the class defined as follows:

All individuals on whom Defendant obtained a consumer report for employment purposes on or after July 31, 2013 and continuing through the date the class list is prepared.

51.     Numerosity:   The class is so numerous that joinder of all class members is impracticable.  Defendant has hundreds of Service Providers, who in

turn directly employ even more individuals, many of whom are members of the class.

52.   <u>Commonality</u>:   Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class.

53.   <u>Typicality</u>:   Plaintiff's claims are typical of the class members' claims.   The FCRA violations committed by Defendant were committed pursuant to uniform policies and procedures, and Defendant treated Plaintiff in the same manner as other class members in accordance with its standard policies and practices.

54.   <u>Adequacy</u>:   Plaintiff will fairly and adequately protect the interests of the class, and has retained counsel experienced in complex class action litigation.

55.   <u>Pre-Suit Notification</u>:   Plaintiff has complied with the pre-litigation notice requirement under O.R.C.P. 32H, but received no response from Defendant.

56.   Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.   Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA.   Questions of law and fact common to the class

predominate over any questions affecting only individual members of the class. Members of the class do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the class on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

## CLAIM FOR RELIEF
### *Failure to Provide Stand-Alone Disclosure*

57.    Defendant violated the FCRA by procuring consumer reports on Plaintiff and class members without making the stand-alone disclosure required by the FCRA. *See* 15 U.S.C. § 1681b(b)(2).

58.    Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the other class members. Defendant's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2), and that Defendant

17

certified that it would comply with 15 U.S.C. § 1681b(b)(2).  Further:

> (a)  The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;
>
> (b)  Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;
>
> (c)  Defendant repeatedly and routinely uses the same unlawful documents it provided to Plaintiff with all of its Service Providers' employees;
>
> (d)  Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer reports without first disclosing in writing to the consumer *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and
>
> (e)  By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

59.   Plaintiff and the class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant

to 15 U.S.C. § 1681n(a)(1)(A).  Plaintiff and the class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff and the class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## **PRAYER FOR RELIEF**

60.    WHEREFORE, Plaintiff, on behalf of himself and the class, prays for relief as follows:

a.    Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

b.    Designating Plaintiff as Class Representative and designating Plaintiff's counsel as counsel for the class;

c.    Issuing proper notice to the class at Defendant's expense;

d.    Declaring that Defendant violated the FCRA;

e.    Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f.    Awarding statutory damages as provided by the FCRA;

g.    Awarding punitive damages as provided by the FCRA;

h.    Awarding reasonable attorneys' fees and costs as provided by the FCRA;

i.     Granting other and further relief, in law or equity, as this Court may

deem appropriate and just.

## DEMAND FOR JURY TRIAL

61.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure,

Plaintiff and the class demand a trial by jury.


                                     BERGER & MONTAGUE, P.C.

Date: July 14, 2016                  /s/ John G. Albanese
                                     E. Michelle Drake, SBN 229202
                                     John G. Albanese (*pro hac vice*)
                                     43 SE Main Street, Suite 505
                                     Minneapolis, MN 55414
                                     Telephone: 612.594.5999
                                     Facsimile: 612.584.4470
                                     emdrake@bm.net
                                     jalbanese@bm.net

                                     Ryan F. Stephan (*pro hac vice*)
                                     James B. Zouras (*pro hac vice*)
                                     Andrew C. Ficzko (*pro hac vice*
                                     forthcoming)
                                     STEPHAN ZOURAS LLP
                                     205 N Michigan Ave, Suite 2560
                                     Chicago, IL 60601
                                     Telephone: 216.233.1550
                                     rstephan@stephanzouras.com
                                     jzouras@stephanzouras.com
                                     aficzko@stephanzouras.com

                                     Anna P. Prakash (*pro hac vice*)
                                     NICHOLS KASTER, PLLP

4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612.256.3200
aprakash@nka.com

Jenny Kiser Mason, SBN 42418
SPERLING LAW GROUP
3175 Shallowford Rd
Chamblee, GA 30341
Telephone: 770.952.8000
jenny@sperlinglegal.com

ATTORNEYS FOR PLAINTIFF

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 14, 2016 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

Date: July 14, 2016                    /s/ John G. Albanese_____
                                       John G. Albanese