IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROMULUS ALBU, individually, and
as a representative of the class,

        Plaintiff,

   v.

THE HOME DEPOT, INC.,

        Defendant.

CIVIL ACTION FILE NO.

1:15-CV-00412-ELR-JFK

COREY BJERKE, individually, and
as a representative of the class,

        Plaintiff,

   v.

THE HOME DEPOT, INC.,

        Defendant.

CIVIL ACTION FILE NO.

1:15-CV-03733-ELR-JFK

## **FINAL REPORT AND RECOMMENDATION**

The above-styled case is presently before the Court on motions [Albu Doc. 51; Bjerke Doc. 51][1] to dismiss filed by Defendant The Home Depot, Inc. ("Home

---

[1] While these two civil actions have not been consolidated, pursuant to the parties' agreement, the Plaintiffs have filed a joint response and the parties have submitted a single set of briefs and filed the same in both Civil No. 1:15-CV-00412-ELR-JFK ("Albu") and Civil No. 1:15-CV-3733-ELR-JFK ("Bjerke") [Doc. 51-1 at 1 n.1].

Depot").   Plaintiffs Romulus Albu ("Albu") and Corey Bjerke ("Bjerke"), both individually, and on behalf of a putative plaintiff class, filed a joint response  [Albu Doc. 53; Bjerke Doc. 53] in opposition, and Defendant Home Depot filed a reply [Albu Doc. 54; Bjerke Doc. 54]. Also before the Court are multiple notices of supplemental authority and related filings submitted by counsel for the parties [Albu Docs. 52, 55–60; Bjerke Docs. 52, 55–57, 60, 64–65].  This matter, now ripe for disposition by the Court, is before the undersigned upon referral from the District Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     BACKGROUND & PROCEDURAL HISTORY

These actions arise from Plaintiffs' nearly identical allegations that Defendant Home Depot willfully violated the Fair Credit Reporting Act ("FCRA") by relying on and using a disclosure form to obtain consent for requesting consumer reports (i.e., background checks, 15 U.S.C. § 1681a(d)(1)(B)) that does not comport with 15 U.S.C. § 1681b(b)(2)(A), commonly known as FCRA's "stand-alone disclosure" requirement. [Albu Doc. 50 - First Amended Complaint – Class Action ("Albu Am. Compl."); Bjerke Doc. 50 - First Amended Complaint – Class Action ("Bjerke Am. Compl.")]. As a practice, Home Depot procures background checks on all people working on Home Depot projects including subcontractors (or "Home Depot Service Providers"). [Albu Am. Compl. ¶ 18; Bjerke Am. Compl. ¶ 21].

2

In February 2015, Plaintiff Albu initiated litigation in the Northern District of Georgia. [Albu Doc. 1 – Albu Complaint ("Compl.")]. On March 6, 2015, Home Depot moved [Albu Doc. 6] to dismiss the Albu complaint, pursuant to Fed R. Civ. P. 12(b), for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be given.

On October 26, 2015, the undersigned issued a Final Report and Recommendation in favor of granting Defendant's motion to dismiss Plaintiff Albu's complaint pursuant to Fed. R. Civ. P. 12(b)(6). [Albu Doc. 35]. The Report and Recommendation addressed Article III standing but nonetheless found that the standing question was intertwined with the merits analysis under Rule 12(b)(6). [Albu Doc. 35 at 11–12]. After considering the sufficiency of the pleadings, the recommendation was that Albu's allegations concerning the willfulness of Defendant's conduct did not withstand Rule 12(b)(6) scrutiny. [Albu Doc. 35 at 12–29].

Albu filed timely objections [Albu Doc. 37], and Home Depot replied [Albu Doc. 40]. In addition, the National Consumer Law Center ("NCLC") and National Association of Consumer Advocates ("NACA") jointly moved [Albu Doc. 38] for leave to file a brief as *amici curiae* in support of Plaintiff Albu's objections. Home Depot opposed the *amici curiae* brief [Albu Doc. 39] but leave was granted [Albu Doc. 46].

3

On March 4, 2016, the presiding District Judge sustained Plaintiff Albu's objections to the Report and Recommendation and adopted in part, modified in part, and declined to adopt in part various aspects of the Report and Recommendation and allowed Albu's claims to proceed. [Albu Doc. 46]. The District Judge determined that the best course of action was to revisit the question of Defendant's alleged willful violation of Section 1681b(b)(2)(A) at the summary judgment stage. [Albu Doc. 46 at 7–14]. As for standing, the District Judge stayed Albu pending a ruling from the Supreme Court in Robins v. Spokeo, Inc., 742 F.3d 409 (9th Cir. 2014), cert. granted sub nom. Spokeo, Inc. v. Robins, 135 S. Ct. 1892 (April 27, 2015) ("Spokeo") [Doc. 46 at 14–16].[2]

In the interim, and prior to issuance of the Spokeo ruling, the Bjerke case, which raised the identical legal issue, was transferred to the Northern District of Georgia by agreement of the parties. [Bjerke Docs. 1, 34]. Bjerke was originally brought in Oregon state court and then subsequently removed by Defendant Home Depot to Oregon federal district court before being transferred.[3] The Bjerke matter was stayed

---

[2] The Spokeo decision issued May 24, 2016. See Spokeo v. Robins, 136 S. Ct. 1540 (2016).

[3] Plaintiffs contend that, in the event this federal court finds that Plaintiff Bjerke lacks Article III standing, the proper remedy is to remand Bjerke to state court rather than dismiss the case. [Bjerke Doc. 53 at 4]. Home Depot notes that remand may be the "technically proper procedure" if the Court so rules but suggests that Bjerke's

AO 72A
(Rev.8/82)

pending resolution of the motion to dismiss in <u>Albu</u> and likewise stayed pending the outcome of <u>Spokeo</u>.  [Bjerke Docs. 41, 46].

On July 14, 2016, First Amended Complaints were filed by both Albu and Bjerke alleging the following facts and willful violation of the FCRA's stand-alone disclosure requirement, 15 U.S.C. § 1681b(b)(2)(A).  [Albu Am. Compl.; Bjerke Am. Compl.].   Plaintiffs seek statutory and punitive damages, plus reasonable attorneys fees and costs.[4]  [Albu Am. Compl. ¶¶ 56–57; Bjerke Am. Compl. ¶¶ 59–60].

## A.    Plaintiff Romulus Albu

In July 2013, Romulus Albu began working for Colorado Delta Mechanical, Inc. ("Delta Mechanical").  [Albu Am. Compl. ¶ 15].   Delta Mechanical is a plumbing, HVAC and re-piping company that contracts with Home Depot to perform installation and service work for Home Depot's customers as a "Home Depot Service Provider." [<u>Id.</u> ¶ 16].  Delta Mechanical provided Albu with a packet or application to complete for Home Depot Service Provider candidates so that he could work on Home Depot projects.  [<u>Id.</u> ¶ 22].   The packet contained, among other things, a Disclosure & Authorization ("disclosure form") for Home Depot to obtain a consumer report on

---

complaint will not survive Oregon's justiciability doctrine either.  [Bjerke Doc. 54 at 1 n.1].

[4] Under 15 U.S.C. § 1681n(a)(1)(A), statutory damages "of not less than $100 and not more than $1,000" are available for each willful violation.

Plaintiff.  [<u>Id.</u> ¶¶ 22, 23, Exhibits ("Exhs.") 2 & 3 (collectively cited as the "D&A")].

Plaintiff Albu signed the disclosure form and authorized Home Depot to obtain a

background report.[5]  [<u>Id.</u> ¶¶ 24, 25, 28].  A consumer report on Plaintiff was ordered,

and Albu was deemed to be compliant.  [<u>Id.</u> ¶¶ 31–35].  Albu has apparently worked

on Home Depot projects and does not allege that he suffered any actual damages

because of Home Depot's background check process.  [<u>Id.</u> ¶¶ 56–57].

### B.    Plaintiff Corey Bjerke

In October 2014, Plaintiff Corey Bjerke applied to do floor installation work

with G.M.A. Construction ("G.M.A."), a home building and remodeling company that

contracts with Defendant to perform installation work as a "Home Depot Service

Provider."   [Bjerke Am. Compl. ¶¶ 18, 19].  In order to be considered eligible for

contract assignments with Defendant Home Depot, Plaintiff Bjerke was presented with

application materials by G.M.A., and Bjerke subsequently consented to a background

check.  [<u>Id.</u> ¶¶ 25–26, Exh. 2].  In addition to the D&A, Bjerke signed a second form,

a "Service Provider Background Screening Consent Form" ("SPBS Consent")

authorizing Home Depot to conduct a background check.  [<u>Id.</u> ¶ 27, Exh. 3].

_____

[5] On or around July 22, 2013, Albu signed a second copy of the D&A that was identical to the original but provided that Choice Point rather than LexisNexis was authorized to conduct the background check.  [Albu Am. Compl. ¶¶ 25–28, Exh. 4].

However, unlike Plaintiff Albu, Plaintiff Bjerke was not approved to perform work for Home Depot.  [Id. ¶¶ 35–36, Exhs. 4, 5].   On or around October 10, 2014, Home Depot obtained a consumer report on Bjerke for employment purposes from First Advantage f/k/a LexisNexis f/k/a/ Choice Point.  [Id. ¶ 34].   Home Depot informed Bjerke that his report "includes information that may eliminate [him] from being authorized to perform work on The Home Depot jobs assigned to [G.M.A.]" and explained that Bjerke could submit additional information explaining his background report results if he was still interested in being authorized as a Home Depot Service Provider.  [Id. ¶ 35, Exh. 4].   On or around November 10, 2014, Defendant informed Bjerke that after reviewing his consumer report, "The Home Depot cannot authorize you to perform work on The Home Depot jobs assigned to [G.M.A.]."  [Id. ¶ 36, Exh. 5].

## C.    Alleged Violation of Section 1681b(b)(2)(A)

Plaintiffs' factual allegations concerning violation of the FCRA's stand-alone disclosure requirement are essentially identical in that Albu and Bjerke signed the same D&A forms for the sole purpose of being eligible to work on Home Depot contractor jobs.  [Albu Am. Compl., Exh. 2; Bjerke Am. Compl., Exh. 2].  Plaintiffs allege that the D&A and SPBS Consent Forms were "the only documents they received that related to the fact that anyone was going to procure a consumer report on [them]

in connection with [their] work for Defendant."[6] [Albu Am. Compl. ¶ 30; Bjerke Am. Compl. ¶ 33].

For the two years preceding the filing of Plaintiffs' First Amended Complaints, Home Depot required all people working on Home Depot projects, including Home Depot Service Providers and the people who work directly for such Service Providers, to undergo and pass a background check. [Albu Am. Compl. ¶ 18, Exh. 1; Bjerke Am. Compl. ¶ 21, Exh. 1]. Over the course of the same time period, Home Depot ran its background check program with ChoicePoint, LexisNexis, and First Advantage. [Albu Am. Compl. ¶¶ 19–21; Bjerke Am. Compl. ¶¶ 22–24].

Home Depot was aware of the FCRA statute, 15 U.S.C. § 1681b(b)(2)(A), regarding the requirement to disclose the background check and, as required under 15 U.S.C. § 1681b(b)(1), certified to its consumer reporting agencies (Choicepoint and its successors) that it had complied with the statute when it obtained the background check. [Albu Am. Compl. ¶¶ 38–44; Bjerke Am. Compl. ¶¶ 40–46]. The disclosure requirement statute provides:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –

---

[6] The record does not make clear why Bjerke signed a SPBS Consent and Albu did not.

8

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A).   In addition to a "Disclosure" paragraph and an "Authorization" paragraph, Home Depot's disclosure form contained a third, two-sentence paragraph stating:

I hereby release Choice Point [and its successor], Company, Home Depot and any person or entity that provides information pursuant to this authorization from any and all liabilities arising from any claims, lawsuits or other actions in regard to the information obtained from any and all of the above referenced sources.  I further agree that the giving of any false, misleading, or incomplete information will be grounds for denial or termination of my authorization to participate in the Home depot installed sales program.

[D&A].  Plaintiffs claim that this is extraneous language which violates the FCRA's disclosure requirement, and Plaintiffs allege that Home Depot "acted willfully and in knowing or reckless disregard of" the statutory disclosure requirement.[7]  [Albu Am. Compl. ¶¶ 26, 45, 47; Bjerke Am. Compl. ¶¶ 28, 47, 49].

---

[7] Bjerke's signing of the SPBS Consent does not alter the analysis in any way because, like the D&A, it contains extraneous information including similar release of liability language and, therefore, technically would not satisfy the stand-alone disclosure requirement.

Plaintiffs assert that their injury is twofold and that they have each suffered an invasion of privacy and informational injury.  Plaintiffs' factual allegations that they "suffered concrete harm from Defendant's actions" are likewise identical.  [Albu Am. Compl. ¶¶ 36, 37; Bjerke Am. Compl. ¶¶ 38, 39].

Defendant Home Depot argues that the complaints should be dismissed for lack of subject matter jurisdiction in that Plaintiffs lack standing under Article III of the United States Constitution.[8]

## II.   ARTICLE III CONSTITUTIONAL STANDING

Article III limits the power of federal courts to the adjudication of actual "cases" and "controversies."   U.S. Const. art. III, § 2. To demonstrate the "irreducible constitutional minimum" for Article III standing, a litigant must show three elements. "First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical . . . .  Second, there must be a causal connection between the injury and the conduct complained of . . . .  Third, it must be

---

[8] Defendant's Rule 12(b)(1) motion challenging Plaintiffs' constitutional standing amounts to a "facial attack" of this federal court's subject matter jurisdiction. See Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999) (regarding the standard of law for Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction; distinguishing between "facial" and "factual" attacks of a complaint) (citations omitted); see also McElmurray v. Consol. Gov't of Augusta–Richmond Cty., 501 F.3d 1244, 1251 (11th Cir. 2007) (same).

likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992) (internal quotation marks and citations omitted).

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." Spokeo, 136 S. Ct. at 1547 (citation omitted).  Given the posture of these cases  – at the pleading stage –  Plaintiffs must "'clearly . . . allege facts demonstrating' each element." Id. (quoting Warth v. Seldin, 95 S. Ct. 2197, 2215 (1975)); and see Hancock v. Urban Outfitters, Inc., 830 F.3d 511, 513 (D.C. Cir. 2016) (applying Iqbal in deciding post-Spokeo standing issue presented via motion to dismiss and stating that "the complaint need only 'state[] a plausible claim' that each element of standing is satisfied" ) (quoting Ashcraft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009)); see also Scarfo, 175 F. 3d at 960 (factual allegations in plaintiff's complaint are taken as true for the purposes of Rule 12(b)(1) motion) (citation omitted).

The only element of standing at issue here is the component of "injury-in-fact" that requires Plaintiffs' alleged injury to be concrete.[9]

---

[9] Defendant does not challenge whether Plaintiffs' alleged injuries are particularized.  [Doc. 53 at 5].  The second and third elements of standing, causal connection and redressability, are likewise not at issue.

AO 72A
(Rev.8/82)

### III.   SPOKEO'S IMPACT

It is well established that "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." Warth, 95 S. Ct. at 2213.  However, "broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury." Sierra Club v. Morton, 92 S. Ct. 1361, 1368 (1972).

In Spokeo, the Supreme Court elucidated Article III's injury-in-fact requirement, "the '[f]irst and foremost' of standing's three elements."[10]  Spokeo, 136 S. Ct. at 1547 (quoting Steel Co. v. Citizens for Better Env't, 118 S. Ct. 1003, 1016 (1998)).  Within the context of an alleged violation of the FCRA, the Supreme Court reiterated that injury in fact is a constitutional requirement and, for that reason, stated that "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue

---

[10] Spokeo involved claims alleging violation of the FCRA based upon plaintiff's discovery that Defendant Spokeo, which operates a web-based "people search engine," generated and disseminated to an unidentified source a profile of plaintiff that contained incorrect information. See Spokeo, 136 S. Ct. at 1544–46. The facts are not germane given that the Supreme Court found the Ninth Circuit's Article III standing analysis, which only spoke to particularization, incomplete and reversed, vacated, and remanded for further analysis, namely, to consider whether plaintiff's alleged injury was sufficiently concrete. Id. at 1550.

12

to a plaintiff who would not otherwise have standing." Id. at 1547–48 (quoting Raines

v. Byrd, 117 S. Ct. 2312, 2318 & n.3 (1997)) (citations omitted).  Differentiating

between particularization and concreteness, the Supreme Court stated that "[a]

'concrete' injury  must be '*de facto*'; that is, it must actually exist."  Id. at 1548

(explaining that the adjective "concrete" is meant to convey the usual meaning of the

term – "real" as opposed to "abstract") (citation omitted).  The Court reaffirmed the

principle that "'concrete' is not . . . necessarily synonymous with 'tangible.'"  Id. at

1549.  "Although tangible injuries are perhaps easier to recognize, . . . intangible

injuries can nevertheless be concrete."  Id. (citations omitted).

With respect to evaluating an alleged intangible harm and injury in fact, the

Supreme Court instructed that "both history and the judgment of Congress play

important roles."  Spokeo, 136 S. Ct. at 1549.  More specifically, "[b]ecause the

doctrine of standing derives from the case-or-controversy requirement, and because

that requirement is grounded in historical practice, it is instructive to consider whether

an alleged intangible harm has a close relationship to a harm that has traditionally been

regarded as providing a basis for a lawsuit in English or American courts."  Id. (citation

omitted).  "In addition, because Congress is well positioned to identify intangible

harms that meet minimum Article III requirements, its judgment is also instructive and

important."  Id.  Recalling Lujan, the Supreme Court stated that "Congress may

13

'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" Id. (quoting Lujan, 112 S. Ct. at 2145).   Of particular import here, Spokeo emphasized that:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  Article III standing requires a concrete injury even in the context of a statutory violation.  For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

Id. (citing Summers v. Earth Island Inst., 129 S. Ct. 1142, 1151 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing."); and Lujan, 112 S. Ct. at 2142).  In terms of guidance, the Supreme Court explained that not all procedural violations of the FCRA would result in harm to the consumer.  Id. at 1550.  "For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate." Id.   The Supreme Court also noted that "not all inaccuracies cause harm or present any material risk of harm" and pointed to the dissemination of an inaccurate zip code as the type of procedural violation unlikely to "work any concrete harm." Id.

14

The Supreme Court spoke to the risk of real harm and observed that consistent with the common law's tradition of permitting recovery in tort where a litigant's harms might be difficult to prove or measure, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." Spokeo, 136 S. Ct. at 1549. In such a case, the plaintiff "need not allege any *additional* harm beyond the one Congress has identified." Id. (emphasis in original) (citing Federal Election Comm'n v. Akins, 118 S. Ct. 1777, 1784–86 (1998) ("confirming that a group of voters' inability to obtain information that Congress had decided to make public [via the Federal Election Campaign Act ('FECA')] is a sufficient injury in fact to satisfy Article III") (internal quotation marks omitted); and Public Citizen v. Dep't of Justice, 109 S. Ct. 2558, 2564 (1989) ("holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act [('FACA')] constitutes a sufficiently distinct injury to provide standing to sue") (internal quotation marks omitted)).

In Church v. Accretive Health, Inc., ___ Fed. Appx. ___, ___, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016), the Eleventh Circuit applied Spokeo in a Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, context and held that the alleged statutory violation in that case was more than a "bare procedural violation" and sufficiently concrete. The Eleventh Circuit found that through

enactment of the FDCPA, "Congress has created a new right – the right to receive the required disclosures in communications governed by the FDCPA – and a new injury – not receiving such disclosures." Id.[11]  In other words, the creation of that new right to receive designated disclosures was substantive as opposed to procedural. Id., at *4 n.2 ("Congress provided Church with a substantive right to receive certain disclosures . . . ."); and see Spokeo, 136 S. Ct. at 1550–54 (Justice Thomas, concurring) (writing to explain how the injury in fact requirements applies to different types of rights, namely, private and public rights); and see Altman v. White House Black Market, 2016 WL 3946780, at *4–5 (N.D. Ga. July 13, 2016) (applying Church and noting interplay between substantive versus procedural rights).

More recently, the Eleventh Circuit applied Spokeo to a claim alleging violation of New York law for failure to timely file a certificate of discharge of plaintiff's mortgage within the thirty-day statutory period.  See Nicklaw v. CitiMortgage, Inc., ___ F.3d ___, 2016 WL 5845682 (11th Cir. October 6, 2016).   The Eleventh Circuit determined, having looked at history and Congressional judgment, that the intangible harm caused by the delay in recording the certificate of discharge did not constitute a

---

[11] The Eleventh Circuit discussed Havens Realty and noted that the Supreme Court looked to the purpose of the Fair Housing Act ("FHA") in evaluating the nature of the asserted statutory interest. See Church, 2016 WL 3611543, at *3 (citing Havens Realty Corp. v. Coleman, 102 S. Ct. 1114, 1120–24 (1982)).

concrete injury despite plaintiff's arguments that the New York legislature intended to create a substantive right to have the certificate of discharge timely recorded and that the right to have a satisfaction of mortgage timely recorded has deep roots in American common law.  Id., at *3.  Notwithstanding the tardy filing (approximately sixty days beyond statutory deadline) and clear violation of statute, the Nicklaw panel found that plaintiff lacked Article III standing since plaintiff did not allege that he lost money as a result, did not allege that his credit suffered, and did not allege that he or anyone else knew that the certificate had not been recorded within the statutory period.  Id. ("[T]he requirement of concreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation.") (citing Spokeo, 136 S. Ct. at 1550).  In other words, plaintiff did not allege facts showing "that he suffered or could suffer any harm that could constitute a concrete injury."  Id., at *4.

Other courts applying Spokeo have taken different approaches, as is evident from the parties' notices of supplemental authority consisting primarily of district court opinions.  See generally, Frank A. Hirsch, Jr., and Michael J. Barry, The Spokeo Result: Who's Peddling Uphill and Who's Just Coasting Down, 20 No. 9 CONSUMER FIN. SERVICES L. REP. 2 at 1–2 (2016) (observing that language from Spokeo can be used to advance either side of the standing argument and that the Supreme Court stopped short of defining what types of intangible harms are sufficiently concrete under Article

17

III).  To date, the only other Circuit Courts of Appeal besides the Eleventh Circuit to apply Spokeo are the Third, Fifth, Eighth, and the District of Columbia Circuits.  See generally, In re: Nickelodeon Consumer Privacy Litig., 827 F.3d 262, 273–74 (3rd Cir. 2016) (Article III standing held to exist for state law privacy claim alleging unlawful disclosure of legally protected information about plaintiffs' online behavior and activities); Lee v. Verizon Commc'ns, Inc., ___ F.3d ___, ___, 2016 WL 4926159, at *1–3 (5th Cir. September 15, 2016) (affirming previous decision following remand from Supreme Court in light of Spokeo finding no Article III standing for alleged violation of statutory right under ERISA prescribing "proper plan management," a "mere allegation of fiduciary misconduct[,]" absent allegation of a real risk that plaintiff's defined-benefit-plan-payments would be affected, and stating that "this conclusion remains as valid in light of Spokeo as it was before Spokeo was decided"); Braitberg v. Charter Commc'ns, Inc., ___ F.3d ___, ___, 2016 WL 4698283, at *3–5 (8th Cir. September 8, 2016) (no Article III standing based upon defendant's alleged failure to destroy plaintiffs' personally identifiable information as contemplated by the Cable Act, 47 U.S.C. § 551(e), and rejecting plaintiffs' invasion of privacy and economic injury theories; noting that Spokeo superseded Eighth Circuit precedent); and Hancock, 830 F.3d at 514 (no Article III standing for plaintiffs alleging violation of District of Columbia's consumer protection laws as a result of defendant-retailer's cashier asking

18

for plaintiffs' zip codes at time of credit card purchase when plaintiffs conceded that the only injury was that under D.C. law they should not have been asked for their zip codes).

In <u>Altman</u>,  The Honorable Steven C. Jones, United States District Court Judge, held that Congress, by way of enacting the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the FCRA, 15 U.S.C. § 1681c(g)(1), provided plaintiff with a substantive right to receive a truncated credit card receipt and that alleged violation of such a right meant that plaintiff sufficiently alleged a concrete (*i.e.*, real) injury, the first element for purposes of Article III standing.  <u>Altman</u>, 2016 WL 3946780, at *5 (citing <u>Church</u>, 2016 WL 3611543, at *3).  Plaintiff Altman complained that defendant-retailer violated FACTA by providing plaintiff with a credit card receipt at the point of sale in the store that contained the first six and last four digits of plaintiff's credit card number.  <u>Id.</u>, at *1.  Altman alleged that by providing more than the five digits permitted under FACTA, defendant "increase[d] the possibility of identity theft or fraud" and that such violation of FACTA was "tantamount to turning over Plaintiff's physical credit card to an identity thief."  <u>Id.</u>  Relying on <u>Church</u>, the court reasoned that Congress had provided plaintiff with a new substantive right, grounded in plaintiff's

19

right to privacy, to receive a truncated credit card receipt.[12]  Id., at *5 (citing Church, 2016 WL 3611543, at *3).

To summarize, since Spokeo addressed procedural violations of the FCRA, it is prudent to consider at the outset the nature of the statutory right being asserted.  See, e.g., Altman, 2016 WL 3946780, at *4 (recognizing that Justice Thomas's concurring opinion in Spokeo is not binding authority, yet acknowledging its guidance as to the injury requirement in the context of an asserted violation of a plaintiff's substantive rights); see also Church, 2016 WL 3611543, at *3.  If the right and alleged statutory violation amounts to a procedural right, the facts and circumstances of the case will inform whether the statutory violation, standing alone, is enough to meet the injury requirement for Article III standing.  Altman, 2016 WL 3946780, at *3 (noting plaintiff correctly described Spokeo's holding in these terms).  Most importantly, "the relevant question is whether [plaintiff] was harmed when this statutory right was violated." Nicklaw, 2016 WL 5845682, at *3.

With respect to the construction and application of Spokeo here, Plaintiffs, who insist that their substantive rights are at stake here, represent that because Spokeo

---

[12] It was the additional digits of the plaintiff's credit card number, the content of the receipt, that the Court found posed an increased risk to plaintiff's identity even though the form of the receipt was an underlying fact that informed the court's analysis.  See Altman, 2016 WL 3946780, at *5.

20

discussed procedural rights, <u>Spokeo</u> is "mostly inapplicable."[13]  [Doc. 53 at 12].  At the same time, Plaintiffs contradict themselves and rely heavily on <u>Spokeo</u>'s acknowledgment that "'[t]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact.'"  [Doc. 53 at 6 (quoting <u>Spokeo</u>, 136 S. Ct. at 1549)].  Defendant argues that Plaintiffs' claims rest on technical violations and thus points to the pronouncement in <u>Spokeo</u> that a "'bare procedural violation, divorced from any concrete harm, . . . [will not] satisfy the injury-in-fact requirement of Article III.'"  [Doc. 51-1 at 2 (quoting <u>Spokeo</u>, 136 S. Ct. at 1549); Doc. 54 at 5].  The undersigned finds that the statutory violation alleged by Plaintiffs is procedural (i.e., form of disclosure) as opposed to substantive (i.e., failure to provide the required disclosure).  Consistent with this Court's initial preliminary finding concerning Albu's allegations, the Court concludes that neither Plaintiff Albu or Bjerke has been harmed as a result of the alleged statutory violation (i.e., neither has sufficiently alleged a concrete injury) and, therefore, neither has Article III standing.[14]

_____

[13] Plaintiffs contend that <u>Spokeo</u> did not alter existing Article III standing but only emphasized the framework for analysis by way of remanding the case to the Ninth Circuit Court of Appeals for further discussion as to whether the alleged injury was sufficiently concrete.  [Doc. 53 at 5–7].

[14] Although the undersigned did not recommend that the District Court's decision be based upon the standing issue in the October 2015 Report and

## IV.   DISCUSSION

"The FCRA seeks to ensure 'fair and accurate credit reporting.'" <u>Spokeo</u>, 136 S. Ct. at 1545 (quoting 15 U.S.C. § 1681(a)(1)). "To achieve this end, the [FCRA] regulates the creation and the use of 'consumer report[s]' by 'consumer reporting agenc[ies]' for certain specified purposes, including . . . employment." <u>Id.</u> (quoting §§ 1681a(d)(1)(A)–(C) and 1681b). When obtained for employment purposes, the FCRA requires employers to disclose to the prospective employee that a background check (a consumer report) will be obtained and to obtain the employee's written authorization to do so in advance of procuring the consumer report. <u>See</u> 15 U.S.C. § 1681b(b)(2)(A)(i) and (ii). Specifically, as stated earlier, Section 1681b(b)(2)(A) requires that the disclosure must be "clear and conspicuous" and in a document that "consists solely of the disclosure," with the exception of the authorization, which may be made on the disclosure document. <u>Id.</u>

As a preliminary matter, the Court looks to the purpose behind the stand-alone disclosure requirement and the nature of the interest(s) it is designed to protect. <u>See</u>

---

Recommendation, this court found, prior to <u>Spokeo</u>, that the cases relied upon by Plaintiff Albu "demonstrate that there was an injury-in-fact caused by a defendant's actions above and beyond a defendant's technical violation of a statute" [Doc. 35 at 10] and that Albu had not demonstrated an injury-in-fact caused by Defendant's alleged violation of 15 U.S.C. § 1681b(b)(2). [Albu Doc. 35 at 6–12].

22

Altman, 2016 WL 3946780, at *4.  Plaintiffs characterize § 1681b(b)(2)(A) as a "notice provision."[15] [Albu Am. Compl. ¶¶ 10–12; Bjerke Am. Compl. ¶¶ 14–15].  According to Plaintiffs, the two provisions of § 1681b(b)(2)(A) work together to require informed consent.  [Albu Doc. 53 at 1].  Defendant does not dispute that the purpose of a stand-alone disclosure is to provide effective notice to the consumer.  [Albu Doc. 54 at 6 n.2 (Section 1681b(b)(2)(A) "was put in place to protect against unknowingly or deceptively obtaining consumer reports" and "to protect a consumer's right to know a consumer report will be obtained")].  Relying on advisory opinion letters of Federal Trade Commission ("FTC") personnel construing § 1681b(b)(2)(A), one court opined that, "The reason for setting this information out on its own in a separate document is so that consumers will not be distracted by additional information at the time the disclosure is given."  Schoebel v. Am. Integrity Ins. Co. of Florida, 2015 WL 3407895, at *5, 9 (M.D. Fla. May 27, 2015) (listing cases addressing same issue, whether release of information included within otherwise proper disclosure and authorization constitutes a violation of § 1681b(b)(2)(A); characterizing as a "technical violation" of the stand-alone disclosure requirement but deemed not "willful" despite erroneous inclusion of

_____

[15] The subheading for Subsection (2) of 1681b(b) is "Disclosure to consumer." 15 U.S.C. § 1681b(b)(2).

23

release language because release was directly related to the disclosure, did not detract from disclosure, and disclosure as a whole was consistent with the spirit of the FCRA).

As for the nature of the interests, at least one district court has expressly opined that the FCRA's stand-alone disclosure requirement conveys "two related but distinct" substantive protections to consumers.  See Thomas v. FTS USA, LLC, ___ F. Supp.3d ___, ___, 2016 WL 3653878, at *6–9 (E.D. Va. June 30, 2016).  However, the result in Thomas is distinguishable on its facts because the plaintiff in Thomas did not receive a timely disclosure, did not provide consent, and asserted violations of both §§ 1681b(b)(2)(A) and 1681b(b)(3)(A).[16]  Id., at *2–3.   The Thomas court opined that § 1681b(b)(2)(A) establishes two rights:

> First, it establishes a right to specific information in the form of a clear and conspicuous disclosure.  The statutory requirement that the disclosure be made in "a document that consists solely of the disclosure" helps to

---

[16] Section 1681b(b)(3)(A) governs use of consumer reports for adverse actions taken by an employer and expressly provides for the consumer to be notified of the employer's intent to take an adverse action prior to any action and that the consumer be provided a copy of the report as well as a description of consumer rights per the FCRA, such that the consumer can seek to correct any error or respond.  Thomas alleged that defendant presented him with a noncompliant disclosure form, obtained a consumer report containing erroneous information, and subsequently advised Thomas that he was not eligible for the position without providing Thomas an opportunity to review or address the contents of the consumer report and without providing Thomas with a summary of his rights under the FCRA.  Id., at *2–3. Thomas sustained a concrete intangible harm.

24

implement the textual command that the disclosure be clear and conspicuous. Second, § 1681b(b)(2) establishes a right to privacy in one's consumer report that employers may invade only under stringently defined circumstances. Those protections are clearly substantive, and neither technical nor procedural.

Id., at *7. In short, Thomas found that the FCRA affords consumers substantive rights to both information and privacy. Id.

Relevant to analysis of the information injury alleged in this case, Thomas found that, if Congress was able to create a legally cognizable right to information, "[b]y extension, it is well within Congress' power to specify the form in which . . . information must be presented." Id., at *9. Relying most heavily on legislative history, Thomas reasoned that if the disclosure does not satisfy § 1681b(b)(2)(A)(i), "the consumer has been deprived of a fully appreciable disclosure to which [plaintiff] is entitled under the FCRA." Id., at *10 (citations omitted).

As for alleged invasion of privacy, Thomas relied on the common law's recognition of a right to personal property and in particular the unauthorized disclosure of an individual's personal information. Thomas, 2016 WL 3653878, at *10. In addition, Thomas noted that Congress may strengthen an already existing common law right with legislation and noted that, if a defendant fails to comply with statutory prerequisites protecting a plaintiff's privacy, the plaintiff's privacy has been unlawfully

25

invaded and he has suffered concrete injury, regardless of actual damages.  Id. (citing In re Nickelodeon, 827 F. 3d at 273–74).

Defendant argues that *even if* this Court were to agree with Thomas that the stand-alone disclosure conveys consumers substantive rights in the "clear and conspicuous disclosure" and the "right to privacy in one's consumer report," Plaintiffs have not alleged facts in support of a plausible violation of either.[17]  Indeed, Thomas recognizes that the analysis would depend not only on the considerations articulated by Spokeo but also "on the facts of each case[.]"  Thomas, 2016 WL 3653878, at *6 ("In sum, then, the proposition that [t]he . . . injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing survives Spokeo subject to qualification, *depending on the facts of each case* and the considerations articulated above, but nevertheless intact.") (quoting Warth, 95 S. Ct. at 2206) (internal quotation marks omitted) (emphasis added).  The Court agrees.

Regardless, the violation of § 1681b(b)(2)(A) complained of by Plaintiffs Albu and Bjerke is more akin to a procedural challenge given that Plaintiffs received all of

_____

[17] The Court finds that the stand-alone disclosure requirement provides both substantive (the right to receive specified information in advance and the right to privacy for personal information) and procedural protections (the form of the disclosure).

26

the information they were entitled to under the FCRA and essentially complain of technical noncompliance.[18] See Hancock, 830 F.3d at 514 ("Indeed, the Supreme Court cautioned in Spokeo that some statutory violations could 'result in no harm,' even if they involved producing information in a way that violated the law.") (quoting Spokeo, 136 S. Ct. at 1550); and see Groshek v. Time Warner Cable, Inc., 2016 WL 4203506, at *2–3 (E.D. Wis. August 9, 2016) (rejecting plaintiff's claim that extraneous information such as a release of liability on disclosure that consumer report would be obtained for employment purposes, an alleged invasion of privacy and violation of § 1681(b)(2)(A)(i), constituted concrete injury for purposes of Article III standing under Spokeo), appeal filed, September 6, 2016, COA No. 16-3355.

With respect to the alleged injury in this case, Albu and Bjerke both contend that violation of the FCRA's stand-alone disclosure requirement by Defendant deprived Plaintiffs of information they were entitled to under the FCRA causing an information injury and that the same violation necessarily constituted an invasion of their privacy.

_____

[18] Plaintiffs allege that "[w]ithout a clear notice that a consumer report is going to be procured on them, applicants are hindered in their ability to preserve their privacy, and to correct errors or other problems with the reports." [Albu Am. Compl. ¶ 13; Bjerke Am. Compl. ¶ 16].

27

[Albu Am. Compl. ¶¶ 36–37; Bjerke Am. Compl. ¶¶ 38–39].  The Court will analyze each of these alleged harms separately.

### A.    Information Injury

The Court considers whether, under these facts, the intangible information injury alleged, Home Depot's inclusion of release of liability language in its D&A, is sufficiently concrete to convey Plaintiffs Article III standing.  See Church, 2016 WL 3611543, at *4 n.2.  In this undertaking, the Court looks to "both history and the judgment of Congress."  Spokeo, 136 S. Ct. at 1549; and see Nicklaw, 2016 WL 5845682, at *3 (quoting Spokeo); Altman, 2016 WL 3946780, at *6 (noting defendant's failure to address Congressional findings).  Defendant contends that the alleged information injury is not the sort of injury traditionally recognized in our jurisprudence.  Indeed, the informational standing cases tend to derive from the modern regulatory environment and statutory provision for information.  See Akins, 118 S. Ct. at 1784 (disclosures prescribed by FECA); Public Citizen, 109 S. Ct. at 2564 (disclosures prescribed by FACA); Havens Realty, 102 S. Ct. at 1122 (information guaranteed by FHA); Church, 2016 WL 3611543, at *3 (disclosures prescribed by FDCPA); and see generally, Sunstein, Cass R., Informational Regulation and Informational Standing: Akins and Beyond, 147 U. Pa. L. Rev. 613, 613–15 (1999) (acknowledging

28

development of the law and trend towards information regulation).  It is clear, as articulated in <u>Thomas</u>, that it was the judgment of Congress that consumers be made aware of requests to obtain consumer reports for employment purposes in advance of a request and that consumers be provided an opportunity to challenge, if necessary, the information contained within the report before being subject to any adverse action.[19]

In asserting information injury, Plaintiffs allege that Defendant "failed to provide Plaintiff[s] with information to which [they] were entitled" under the FCRA.  [Albu Am. Compl. ¶ 37; Bjerke Am. Compl. ¶ 39].  However, unlike the cases Plaintiffs seek to rely on, Plaintiffs fail to identify any information they contend they were entitled to and did not receive. [Id.].  Defendant suggests that to accept Plaintiffs' argument would be to credit form over substance and that if there ever is a case that can be characterized as a bare procedural violation of § 1681b(b)(2)(A), this is the case.[20]  [Doc. 51-1 at 10, 12;  Doc. 54 at 1, 3].

---

[19] <u>Thomas</u> includes a thorough and detailed analysis of the FCRA's historical framework and legislative history which the undersigned will not attempt to duplicate or recite herein.  <u>Thomas</u>, 2016 WL 3653878, at *6–8.

[20] According to Defendant, Plaintiffs claim that Defendant allegedly did not comply with "the letter of the process set forth" within the statute and that Plaintiffs' only allegation is that the information "did not come in the form specifically prescribed" by statute.  [Doc. 51-1 at 10, 12].  While Defendant's description of the issue is factually accurate, it does not end the Court's analysis.

29

Church v. Accretive Health provides an example of a concrete information injury under the FDCPA. While instructive, Church does not control in this instance because the plaintiff in Church did not receive the required disclosures and was, in fact, deprived of information Congress deemed necessary for the protection of consumers.[21]  See Church, 2016 WL 3611543, at *3 ("The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled.").  Likewise, Plaintiffs' reliance on Havens Realty and the Eleventh Circuit's analogy in Church to the standing of a tester-plaintiff – an individual posing as a renter to collect evidence of unlawful steering practices – alleging that a defendant provided the plaintiff with false information is misplaced since a

_____

[21] Compare with Fisher v. Enter. Holdings, Inc., 2016 WL 4665899, at *4 (E.D. Mo. September 7, 2016) (distinguishing Church and noting that where plaintiff authorized consumer report via electronic signature, disclosure consisted of two sentences within an online employment application, authorization was presented in a separate form that encompassed authorization for release of other reports as well, and neither form electronically signed by plaintiff complied with FCRA's stand-alone disclosure requirement, plaintiff did not have standing in that the alleged injury concerned "the format and conspicuousness of a disclosure"); and with Zia v. CitiMortgage, Inc., ___F. Supp.3d ___, ___, 2016 WL 5369316, at *2–6 (S.D. Fla. September 26, 2016) (applying Spokeo, distinguishing Church and other "informational standing" cases and finding no standing to bring claim alleging violation of New York statutory law requiring certificates of discharge of mortgage to be filed within thirty days of satisfaction and where plaintiff "advanced a 'naked assertion' that the satisfaction-of-mortgage documents . . . were filed beyond the thirty-day time period 'without any concrete consequence'").

"statutorily created right to truthful housing information" involves content (veracity) and is substantive in nature.[22] Id. (citing Havens Realty, 102 S. Ct. at 1120–24 (tester-plaintiff held to have alleged injury-in-fact despite fact that plaintiff did not intend to rent an apartment where defendant provided false information about availability of apartments on four occasions, and explaining that the Fair Housing Act ("FHA") "establishes an enforceable right to truthful information concerning the availability of housing")). There is no claim by Plaintiffs Albu or Bjerke that Home Depot failed to disclose any substantive information.

In addition to Church, Plaintiffs refer the Court to Moody v. Ascenda USA, Inc., 2016 WL 5900216 (S.D. Fla. October 5, 2016), which is also distinguishable on its facts. The FCRA disclosure in Moody contained extraneous release of liability language similar to that found within the Home Depot D&A. Id., at *1 (incorporating prior orders and factual background included within 2016 WL 4702681, at *1–2 (S.D. Fla. July 1, 2016)). However, unlike the instant case, the consumer report presented to plaintiff's defendant-employer contained false information about plaintiff and Moody was not given an opportunity to challenge the false information contained in the report prior to being suspended from her job. Id. Moody recognized the split in persuasive

_____

[22] There is no claim here that Plaintiffs were provided any false information.

31

authority but was ultimately "persuaded by the reasoning of the cases which have found the Spokeo standing requirement satisfied in this context." Id., at *5. Plaintiffs' Second Amended Complaint in Moody *alleged* (a legal conclusion) that pursuant to Church, "Plaintiffs suffered a concrete informational injury because Defendant failed to provide Plaintiffs with information to which they were entitled to by statute, namely a stand-alone FCRA disclosure form.  Through the FCRA, Congress has created a new right – the right to receive the required disclosures as set out in the FCRA – and a new injury – not receiving a stand-alone disclosure." Id., at *3 (quoting Second Amended Complaint, ¶ 77).  Effectively, Moody construed the Eleventh Circuit's ruling in Church *to extend* informational standing to include *the form of the information*.  Id., at *6 (citing Church, 2016 WL 3611543, at *1).   Relying on Church and Thomas, the court found Article III standing existed based upon alleged information injury and invasion of privacy.  Id., at *5–6 (quoting Thomas, 2016 WL 3653878, at *7).  The undersigned is not persuaded that the Moody court's interpretation of Church is in line with Spokeo's teaching or other information standing cases because Church was premised on a *failure* to provide information.  See Church, 2016 WL 3611543, at *3; and see In re Nickelodeon, 827 F.3d at 273–74 ("Intangible harms that may give rise to standing also include harms that 'may be difficult to prove or measure,' such as unlawful denial

32

of access to information subject to disclosure.") (quoting Spokeo, 136 S. Ct. at 1549).

The same can be said for most, if not all, of the information injury cases cited by

Plaintiffs.[23]

In Plaintiffs' opposition brief, Plaintiffs *argue* that the extraneous information

renders the disclosure ineffective.  [Albu & Bjerke Docs. 53 at 20–24].  Presumably,

Plaintiffs contend that because it did not stand alone, the Home Depot D&A is less

"clear and conspicuous."  Plaintiffs do not explicitly make or develop that argument.

[Id.].  In fact, Plaintiffs do not allege that they were confused or distracted at all by the

format of the Home Depot D&A.

Moreover, Defendant persuasively argues that the objectives of the FCRA were

achieved here.  [Albu & Bjerke Docs. 54 at 1].  In enacting the FCRA, Congress

explained:

_____

[23] Defendant correctly states [Albu & Bjerke Docs. 54 at 9–11] that Plaintiffs rely on cases [Albu & Bjerke Docs. 53 at 8–12] speaking primarily to the failure to disclose information that should have been disclosed (i.e., Akins, Public Citizen), the provision of false information to plaintiff (i.e., Havens Realty), and the unauthorized disclosure of personal information due to failure to provide statutorily required disclosure and obtain written consent from consumer (i.e., Church, Thomas). But see Panzer v. Swiftships, LLC, 2015 WL 6442565, at *5 (E.D. La. October 23, 2015) (pre-Spokeo ruling, stating that "Under the FCRA, Plaintiff and other consumers have the right to specific information at specific times.").

> It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(b).  It is undisputed that Plaintiffs were provided the requisite disclosure information and that the timing of the disclosure was consistent with the statute since disclosure was made in advance of Home Depot requesting and obtaining the consumer report, and Plaintiffs do not allege that they were confused or mislead by the D&A forms, that they did not voluntarily give informed consent for Defendant to obtain the sought after consumer background information, or that the information obtained by Home Depot was factually correct.[24]  Aside from the fact that Plaintiffs were not deprived of substantive information, there is no claim that the alleged injuries are difficult to measure or prove.  In conclusion, under these facts, the Court finds that Article III standing is not supportable by Plaintiffs' alleged purported information injury.

---

[24] There is no allegation by Plaintiff Bjerke that the background check obtained by Home Depot contained inaccurate information or that Bjerke sought to challenge the report.

34

### B.      Invasion Of Privacy

Plaintiffs next allege that their right to privacy has been invaded as a result of Defendant's failure to comply with the FCRA's stand-alone disclosure requirement. [Albu Am. Compl. ¶ 36; Bjerke Am. Compl. ¶ 38]. More specifically, Plaintiffs claim that because Defendant failed to adhere to the statutorily prescribed means for obtaining Plaintiffs' consent, Defendant unlawfully accessed their private information. [Albu Am. Compl. ¶ 36; Bjerke Am. Compl. ¶ 38]. To be clear, Plaintiffs do not allege that their consent was uninformed. Likewise, Plaintiffs do not allege that Defendant accessed their private information for an improper purpose or that their private information was improperly disclosed by Home Depot.[25]

---

[25] Again, this fact renders most, if not all, of the cases cited by Plaintiffs inapposite. See, e.g., Church, 2016 WL 3611543, at *3 (defendant's correspondence to plaintiff did not contain all of disclosures required by FDCPA resulting in violation of plaintiff's statutory right to receive disclosures and injury in the form of failure to receive information); In re Nickelodeon, 827 F. 3d at 272–74 (concrete injury for purposes of Article III standing based upon the unauthorized disclosure of plaintiffs' personal information in the form of online behavior); and see Thomas, 2016 WL 3653878, at *10–11 (plaintiff's statutory right to confidentiality of his personal information invaded by defendant where defendant obtained consumer report on plaintiff without first providing the required disclosure or obtaining plaintiff's written consent pursuant to § 1681b(b)(2)(A)); Perrill v. Equifax Info. Serv., LLC, ___ F. Supp.3d ___, ___, 2016 WL 4572212, at * 3 (W.D. Texas August 31, 2016) (Article III standing found to exist for FCRA violation where plaintiffs, both officers of an entity subject to settlement agreement for failure to pay taxes, alleged invasion of privacy by defendant for releasing plaintiffs' consumer report to State of Texas

35

As alluded to in the discussion of <u>Thomas</u> *supra*, invasion of privacy is a "harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts" and thus may constitute a legally cognizable injury. <u>Spokeo</u>, 136 S. Ct. at 1549; <u>accord</u> <u>Thomas</u>, 2016 WL 3653878, at *10–11 (acknowledging common law right to privacy and stating that "it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue") (citations omitted); <u>see generally</u>, <u>Braitberg</u>, 2016 WL 4698283, at *3–4 (common law invasion of privacy). Furthermore, in enacting the FCRA, Congress found that, "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."[26] 15 U.S.C. § 1681(a)(4). Thus, both history and the judgment of Congress reveal that the FCRA, by requiring notice, limiting access, and delineating procedure

---

Comptroller without disclosure and authorization and where Comptroller and defendant had contractual arrangement that would permit disclosure for specified purpose and upon representation that the plaintiffs' consumer reports would be used to collect taxes).

[26] Consumer reports typically contain private and identifying personal information such as birth date, address history, gender, race, partial social security number, credit score, and criminal history information.

for the consumer to challenge incorrect reporting, seeks to protect consumers' personal information.  See  Thomas, 2016 WL 3653878, at *10–11; accord Altman, 2016 WL 3946780, at *5 (FACTA's protection of credit card number).  Moreover, Defendant does not seriously dispute that an unauthorized disclosure of personal information is a substantive – not procedural – matter.   [Albu & Bjerke Docs. 54 at 11–12].

Nonetheless, Plaintiffs' factual allegations fail to demonstrate concrete injury based upon invasion of privacy.  Addressing the same legal argument as Plaintiffs advance here, the plaintiff in Groshek argued that defendant "obtained [plaintiff's] personal information as a result of the unlawful permission it received."  Groshek, 2016 WL 4203506, at *2.  Thus, Groshek's alleged invasion of privacy was premised upon the notion that the authorization provided by plaintiff for obtaining the consumer report was unlawful since not fully compliant with § 1681(b)(2)(A)(i).  The court determined that Groshek did not allege a concrete harm under Spokeo where Groshek did not allege that he was not selected for the job as a result of the consumer report defendant obtained, did not allege that defendant released the information in the report to other people, causing him embarrassment or damaging his credit, and did not allege that defendant used the consumer report against him in any way.  Id., at *3 (citing Smith v. The Ohio State Univ., 2016 WL 3182675, at *3–4 (S.D. Ohio June 8, 2016) (no

37

concrete injury based on allegation that defendant violated the FCRA by including extraneous information, such as a liability release, in the disclosure and authorization)). The court dismissed Groshek's complaint and stated that, "[b]ecause the plaintiff has not alleged a concrete harm resulting from the defendant's alleged violation of the FDCPA [FCRA], the plaintiff does not have standing . . . ."[27] Id., at *3.

In Braitberg, the Eighth Circuit rejected plaintiff's contention that an alleged invasion of plaintiff's privacy *solely* for defendant's retention of personal information beyond the statutorily prescribed time period could support Article III's injury in fact requirement.[28]  Braitberg, 2016 WL 4698283, at *3–4.  The court recognized the common law tradition of lawsuits for invasion of privacy but expressly stated that "the retention of information lawfully obtained, *without further disclosure*, traditionally has

---

[27] Groshek's cite to the FDCPA appears to be a typographical error since the only claims Groshek alleged in his complaint were violations of the FCRA.

[28] Defendant correctly points out that in Plaintiff Albu's original opposition brief, Albu relied on the Eighth Circuit's Hammer decision for the proposition that Article III standing is satisfied solely by the invasion of a legal right created by Congress.  [Doc. 56 at 4 (citing Hammer v. Sam's East, Inc., 754 F.3d 492 (8th Cir. 2014)].  Braitberg expressly states that given Spokeo, Hammer is no longer good law. See Braitberg, 2016 WL 4698283, at *4 ("In Spokeo, . . . the Supreme Court rejected this absolute view and superseded our precedent in Hammer . . . .").

38

not provided the basis for a lawsuit in American courts." Id., at *4 (citations omitted) (emphasis added).

In this case, Defendant secured written consent in advance of obtaining consumer reports on both Plaintiffs Albu and Bjerke and obtained, through its agent, and used the consumer reports for a permissible purpose.[29]  It is undisputed that Home Depot did not disclose Plaintiffs' personal information to a third party.  Notwithstanding the fact that the D&A contained additional language, a potential violation of the stand-alone disclosure requirement of § 1681b(b)(2)(A), Plaintiffs cannot show that they were subject to any concrete harm as a result of any statutory violation. See Spokeo, 136 S. Ct. at 1550; and see Warth, 95 S. Ct. at 2206 ("Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules.  Of course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.") (citation omitted).  For these reasons, Plaintiffs' allegations concerning invasion of privacy are insufficient for purposes of Article III standing.

---

[29] The problem with Plaintiffs' legal position is that in order for the Court to find that an unauthorized disclosure occurred here, the Court would either have to deem the D&A unlawful or negate or void Plaintiffs' consent.

39

## V.    RECOMMENDATION

Based on the foregoing reasons and cited authority, the undersigned **RESPECTFULLY RECOMMENDS** that Defendant Home Depot's Rule 12(b)(1) motion [Albu Doc. 51] to dismiss be **GRANTED** and that Albu's First Amended Complaint be **DISMISSED** for lack of subject matter jurisdiction.

Further, the undersigned **RESPECTFULLY RECOMMENDS** that Defendant Home Depot's Rule 12(b)(1) motion [Bjerke Doc. 51] to dismiss be **DENIED** but that the Bjerke action be **REMANDED** to state court pursuant to 28 U.S.C. § 1447(c) for the reasons set forth by Plaintiff Bjerke.[30]  [Bjerke Doc. 53 at 4].

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule 72.1, and Standing Order 14-01 (N.D. Ga. August 15, 2014).  The Clerk, therefore, is **DIRECTED** to terminate the reference to the Magistrate Judge.

---

[30] The Bjerke First Amended Class Action Complaint alleges a single violation of Section 1681b(b)(2)(A) for failure to comply with the FCRA's stand-alone disclosure requirement and does not assert any state law claims.  Therefore, there is no supplemental jurisdiction question, 28 U.S.C. § 1367.

**SO ORDERED THIS** 2nd day of November, 2016.

_____

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

41